1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ANTONIO ALFONSO REYNA,                No.  2:22-cv-02295-KJM-CSK

12                   Petitioner,

13          v.                              FINDINGS AND RECOMMENDATIONS

14    THERESA CISNEROS,

15                   Respondent.

16

17          Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

18    habeas corpus pursuant to 28 U.S.C. § 2254.  This case proceeds on the amended petition filed

19    April 15, 2024. Petitioner challenges his 2019 conviction for murder with the special

20    circumstance of robbery (Cal. Penal. Code §§ 187(a), 190.2(a)(17)).  Petitioner is serving a

21    sentence of life without the possibility of parole. Petitioner raises the following claims in his

22    petition: (1) improper admission of prior robbery conviction; (2) ineffective assistance of counsel

23    for failure to move for recusal of judge; (3) insufficient notice of the robbery special

24    circumstance; and (4) cumulative error in violation of due process. This matter is fully briefed.

25    After careful review of the record, this Court concludes that the petition should be denied.

26    ///

27    ///

28

                                            1

1    I.        PROCEDURAL BACKGROUND

2           A.  <u>State Court History</u>

3          On March 29, 2019, in the Sacramento County Superior Court, petitioner was convicted

4    of first degree murder with a special circumstance that the murder was committed during a

5    robbery or attempted robbery, and also found guilty of being a convicted felon in possession of a

6    firearm.  In addition, the jury found true an allegation that defendant was convicted of robbery in

7    2007 for events that took place in 2005.  (ECF No. 19-2 at 250-51.)  On August 23, 2019,

8    petitioner was sentenced to an indeterminate term of life without the possibility of parole for the

9    murder and special circumstance, and a stayed consecutive term of eight months for the firearm

10    possession. (ECF No. 19-3 at 41-44.)[1]

11         Petitioner appealed his conviction to the California Court of Appeal. (ECF No. 19-14.)

12    Petitioner raised the following issues in his brief on appeal: (1) the trial judge erred by not

13    recusing herself from a hearing on whether to exclude testimony of a witness, and defense

14    counsel violated petitioner's right to effective assistance of counsel by failing to object to the trial

15    judge's participation; (2) the trial court violated petitioner's due process rights when it admitted

16    evidence of his 2007 conviction for a 2005 robbery; (3) the trial court erred by denying

17    petitioner's motion to suppress statements he made in a police interview; (4) the trial court erred

18    when it sustained a prosecution objection to a question posed by defense counsel; (5) the trial

19    court violated petitioner's due process rights by excluding a written plea agreement from a federal

20    prosecution against a witness in this case; (6) the trial court violated petitioner's constitutional

21    rights by denying his request to modify a jury instruction; (7) the trial court erred by instructing

22    the jury it could find the special circumstance true based on attempted robbery; and (8)

23    cumulative prejudice required reversal.  (<u>Id.</u>)  On January 24, 2022, the California Court of

24    Appeal affirmed the judgment in a reasoned opinion. (ECF No. 19-17.)

25         Petitioner filed a petition for review in the California Supreme Court, raising the same

26    claims as in his opening brief.  (ECF No. 19-18.)  The court denied the petition on March 30,

27

28    [1] Record citations refer to page numbers assigned by the Court's docketing system.

1    2022. (ECF No. 19-19.)

2          Petitioner next filed a petition for writ of habeas corpus in the California Supreme Court.

3    (ECF No. 19-20.)  The court denied the petition on October 26, 2022. (ECF No. 19-21.)

4          B.    The Federal Petition

5           Petitioner filed a pro se federal petition on December 23, 2022.  (ECF No. 1.)  After the

6    Court appointed counsel to represent petitioner (ECF Nos. 5 & 7), he filed an amended petition

7    on April 15, 2024.  (ECF No. 28.)  Petitioner raises four claims in the amended petition:

8    (1) improper admission of prior robbery conviction; (2) ineffective assistance of counsel for

9    failure to move for recusal of judge; (3) inadequate notice of the robbery special circumstance;

10   and (4) cumulative error in violation of due process.

11         On July 24, 2024, respondent filed an answer. (ECF No. 31.)  On November 13, 2024,

12   petitioner filed a reply.  (ECF No. 25.)

13   II.    FACTS

14         After independently reviewing the record, this Court finds the state appellate court's

15   factual summary to be accurate and adopts it herein:

16              Defendant met William Goins in prison. Out of prison, they bought,
                sold, and used methamphetamine together. They also looked for
17              opportunities to rob for methamphetamine. Eventually, Goins began
                staying at a house on Dewitt Court with several others, including
18              Rafael Cervantes, whom the other occupants called Jefe because he
                was the "meth cooker" and was associated with a Mexican cartel.
19              Another occupant was William R.

20              Goins informed defendant the occupants of the Dewitt Court
                residence would be good to rob because of an abundance of
21              methamphetamine. Defendant decided to conduct a robbery at the
                residence.
22
                On June 17, 2016, Goins sent defendant a coded message telling
23              defendant there was a large amount of methamphetamine and
                marijuana in the Dewitt Court residence. The next morning, on June
24              18, 2016, defendant and Goins met and discussed the layout of the
                house, what was there, and who was there. Defendant asked Goins to
25              be at the residence to make sure the front door was unlocked. Goins
                agreed. Later in the day, defendant texted Goins, asking him for a
26              "drawing," meaning a diagram of the inside of the residence. Goins
                made a diagram and texted a picture of it to defendant. Goins also
27              sent further details about where everyone was in the residence.

28              Defendant arrived at Dewitt Court in a car with two other men. Goins

                                           3

went outside to tell the men about the occupants of the residence. Goins returned to the residence, made sure the front door was unlocked, and went into a bedroom.

Defendant and the other men entered the house and yelled at everyone to get down. William R. was sitting on a couch when the men entered. He testified that defendant, pointing a gun, went down the hall toward Cervantes's bedroom. Defendant began shooting toward the bedroom but retreated back toward the front door. Defendant then turned and ran out the front door.

Cervantes was in his bedroom when defendant entered the residence. He was shot and killed at the door of his bedroom.

Defendant was charged, along with Goins, with special-circumstance murder. Goins pleaded guilty to robbery pursuant to a plea agreement, and defendant was tried by himself.

The jury found defendant guilty of first degree murder with a special circumstance that the murder was committed during a robbery or attempted robbery. The jury also found defendant guilty of being a convicted felon in possession of a firearm. Finally, the jury found true an allegation that defendant was convicted of robbery in 2007.

The trial court sentenced defendant to life without the possibility of parole for the special-circumstance murder and imposed but stayed a sentence for the firearm-possession count under section 654.

People v. Reyna, Sup. Ct. No. 16FE012775 (Jan. 24, 2022) (ECF No. 19-17).

III.    STANDARDS FOR A WRIT OF HABEAS CORPUS UNDER ANTITERRORISM

AND EFFECTIVE DEATH PENALTH ACT (AEDPA)

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of holdings of the Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 565 U.S. 34, 39-40 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 567 U.S. 37, 48-49 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, there is no "clearly established federal law" governing that issue. See Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."[2]

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

1    Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); see also Chia v.

2    Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, "a federal habeas court may not issue

3    the writ simply because that court concludes in its independent judgment that the relevant state-

4    court decision applied clearly established federal law erroneously or incorrectly.  Rather, that

5    application must also be unreasonable."  Williams, 529 U.S. at 411; see also Schriro v. Landrigan,

6    550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court,

7    in its independent review of the legal question, is left with a firm conviction that the state court

8    was erroneous") (internal quotations and citation omitted).  "A state court's determination that a

9    claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on

10   the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011)

11   (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for

12   obtaining habeas corpus from a federal court, a state prisoner must show that the state court's

13   ruling on the claim being presented in federal court was so lacking in justification that there was

14   an error well understood and comprehended in existing law beyond any possibility for fair-

15   minded disagreement."  Id. at 103.

16        If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

17   court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

18   527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

19   (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

20   § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

21   considering de novo the constitutional issues raised.").

22        The court looks to the last reasoned state court decision as the basis for the state court

23   judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

24   If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

25   previous state court decision, this court may consider both decisions to ascertain the reasoning of

26   the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

27   federal claim has been presented to a state court and the state court has denied relief, it may be

28   presumed that the state court adjudicated the claim on the merits in the absence of any indication

6

1    or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption

2    may be overcome by a showing "there is reason to think some other explanation for the state

3    court's decision is more likely."  Id. at 99-100.  Similarly, when a state court decision on

4    petitioner's claims rejects some claims but does not expressly address a federal claim, a federal

5    habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the

6    merits.  Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98).  If a

7    state court fails to adjudicate a component of the petitioner's federal claim, the component is

8    reviewed de novo in federal court.  See, e.g., Wiggins v. Smith, 539 U.S. 510, 534 (2003).

9           Where the state court reaches a decision on the merits but provides no reasoning to

10   support its conclusion, a federal habeas court independently reviews the record to determine

11   whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

12   Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

13   review of the constitutional issue, but rather, the only method by which we can determine whether

14   a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

15   reasoned decision is available, the habeas petitioner has the burden of "showing there was no

16   reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

17          A summary denial is presumed to be a denial on the merits of the petitioner's claims.

18   Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze

19   just what the state court did when it issued a summary denial, the federal court reviews the state

20   court record to "determine what arguments or theories . . . could have supported the state court's

21   decision; and then it must ask whether it is possible fairminded jurists could disagree that those

22   arguments or theories are inconsistent with the holding in a prior decision of [the Supreme]

23   Court."  Richter, 562 U.S. at 101.  It remains the petitioner's burden to demonstrate that 'there

24   was no reasonable basis for the state court to deny relief.'"  Walker v. Martel, 709 F.3d 925, 939

25   (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

26          When it is clear, however, that a state court has not reached the merits of a petitioner's

27   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

28   habeas court must review the claim de novo.  Stanley, 633 F.3d at 860 (citing Reynoso v.

7

1  Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006)).

2  IV.  DISCUSSION

3      A.  Claim One:  Admission of Prior Robbery Conviction

4          Petitioner claims that the trial court prejudicially erred by allowing the prosecution to

5  present evidence of his 2007s conviction for a 2005 robbery in violation of his due process rights.

6  (ECF No. 28 at 38; see also id. at 49 (prior conviction evidence early in trial "set the stage for

7  everything to come after, tainting the jury's perception of all the remaining evidence").  In

8  response, respondent argues that there is no clearly established right barring admission of

9  propensity evidence, such that the state court's decision cannot be contrary to clearly established

10  Supreme Court precedent. (ECF No. 31 at 11-12.)

11          The California Court of Appeal issued the last reasoned state court decision addressing

12  this claim.  The California Court of Appeal denied this claim for the following reasons:

13          Defendant next contends the trial court abused its discretion under
14      Evidence Code sections 1101, 1108, and 352 and violated his due
        process rights when it admitted evidence of defendant's 2005
15      robbery.

16          The challenged trial court ruling was made before trial. Nevertheless,
        in arguing this evidentiary issue on appeal, defendant relies, at least
17      in part, on evidence admitted at trial. However, we review the
        correctness of trial court evidentiary rulings in light of what the trial
18      court knew at the time of the ruling, not in light of later events.
        (People v. Hartsch (2010) 49 Cal.4th 472, 491.) We therefore
19      disregard any arguments defendant bases on the evidence admitted
        after the trial court ruled.

20          The prosecution moved to admit evidence of a robbery defendant
        committed in 2005. According to the prosecution motion, defendant
21      and an accomplice entered a residence where defendant produced a
        gun and demanded money from an occupant. Defendant grabbed the
22      victim, pushed him onto the couch, and stole property and money
        from the victim. In opposition to the motion to admit the evidence,
23      defendant added to those facts. He and his accomplice went to the
        residence, where the accomplice had been a frequent guest. They
24      were invited in. Defendant produced a gun, forced the victim into a
        bathtub, and demanded to know where the victim's valuables were.
25      The accomplice took a laptop computer, a wallet, and other valuables
        before defendant and the accomplice left the residence. The trial
26      court determined that the 2005 robbery was admissible under
        Evidence Code section 1101, subdivision (b) to show motive and
27      intent in this case. The trial court instructed the jury that it could
        consider the 2005 robbery only on the issue of "whether the
28      defendant acted with intent to commit robbery in this case' and could

not 'conclude from this evidence that the defendant has a bad character or is disposed to commit crime."

Evidence Code section 1101, subdivision (a) prohibits admission of evidence of a person's character, including evidence of specific instances of uncharged misconduct, offered "to prove his or her conduct on a specified occasion." (People v. Ewoldt (1994) 7 Cal.4th 380, 393, fn. 1 (Ewoldt), superseded by statute on other grounds as stated in People v. Britt (2002) 104 Cal.App.4th 500, 505.) However, subdivision (b) of the same statute permits evidence of uncharged misconduct to establish facts other than the person's disposition to commit similar acts, such as defendant's motive, intent, or the absence of mistake or accident. (Ewoldt, at p. 393.) The "least degree of similarity" is needed for admission under Evidence Code section 1101, subdivision (b), to prove intent. (Ewoldt, at p. 402.)

We review rulings under Evidence Code sections 1101 and 352 for abuse of discretion. (People v. Mungia (2008) 44 Cal.4th 1101, 1130.) "Trial courts enjoy '"broad discretion"' in deciding whether the probability of a substantial danger of prejudice substantially outweighs probative value. [Citations.] A trial court's exercise of discretion 'will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (People v. Holford (2012) 203 Cal.App.4th 155, 167-168 (Holford).) Generally, evidence properly admitted under the Evidence Code does not violate a defendant's due process rights. (People v. Merriman (2014) 60 Cal.4th 1, 67 (Merriman).)

Here, the similarities between the 2005 robbery and the current crimes were sufficient to support admission of the 2005 robbery as evidence of defendant's intent in this case. In both situations, defendant entered a home by working with an accomplice who had access to the residence. Defendant entered a residence knowing there was something to steal, whether drugs or other valuables. In both situations, defendant used a gun, and an attempt was made to subdue the occupants of the residence.

From the evidence of the 2005 robbery and the similarities to this case, the jury in this case could infer that defendant entered the Dewitt Court residence with the intent to commit robbery. Therefore, the evidence was admissible under Evidence Code section 1101, subdivision (b). And this evidence was not so prejudicial that "its probative value [was] substantially outweighed by the probability that its admission [would] ... create substantial danger of undue prejudice ...." (Evid. Code, § 352.) It was not of a type to evoke an emotional bias against defendant without probative value. (People v. Elliott (2012) 53 Cal.4th 535, 577-578.) Furthermore, the trial court instructed the jury that this evidence was admissible only on the issue of defendant's intent in the present case.

Defendant's contention the trial court abused its discretion and violated his due process rights by admitting evidence of the 2005 robbery is without merit.

(ECF No. 19-17 at 8-11.)

1  Petitioner first argues that admitting the 2005 robbery evidence was an unreasonable

2  determination of the facts under § 2254(d)(2).  He argues that "the trial and appellate court

3  misconstrued the relevant factual issue when they framed it as whether the prior conviction was

4  admissible to prove [intent to commit the robbery].  Instead, [the issue] was identity": whether

5  petitioner was misidentified as one of the robbers in the charged crime, as he argued in his

6  defense. (ECF No. 28 at 42.)

7  At trial, the defense moved to exclude all prior acts evidence on the grounds that it would

8  violate Cal. Evid. Code § 1101(a), providing that evidence of past conduct is inadmissible to

9  prove conduct on a specified occasion[3], and was more prejudicial than probative.  (ECF No. 19-1

10  at 46-51; <u>see</u> Cal. Evid. Code § 352.)  The defense argued that the 2005 robbery was not

11  sufficiently similar to the charged offense to prove identity—i.e., that the same person committed

12  both crimes.  <u>See</u> People v. Haston, 69 Cal. 2d 233, 246 (1968) ("[T]he inference of identity

13  arises when [very similar offenses] tend to suggest that the perpetrator of the [past] offenses was

14  the perpetrator of the charged offenses.").

15  The prosecution countered that evidence of the 2005 robbery should be admitted to show

16  motive and intent, two other permissible reasons under § 1101(b). (ECF No. 19-1 at 85-91.) The

17  trial court found the evidence admissible, reasoning that

18
19
> this goes to the issue of motive and intent. It is substantially more
> probative than it is prejudicial. There is significant, in this Court's
> view, similarities between the crime that occurred some years ago

20
21  [3] Cal. Evid. § 1101 provides in relevant part:

22
23
24
> (a) Except as provided . . . , evidence of a person's character or a trait
> of his or her character (whether in the form of an opinion, evidence
> of reputation, or evidence of specific instances of his or her conduct)
> is inadmissible when offered to prove his or her conduct on a
> specified occasion.

25
26
27
28
> (b) Nothing in this section prohibits the admission of evidence that a
> person committed a crime, civil wrong, or other act when relevant to
> prove some fact (such as motive, opportunity, intent, preparation,
> plan, knowledge, identity, absence of mistake or accident, or whether
> a defendant in a prosecution for an unlawful sexual act or attempted
> unlawful sexual act did not reasonably and in good faith believe that
> the victim consented) other than his or her disposition to commit such
> an act.

1    and the case that is before the Court, and that is a motive and intent
     to engage in a home invasion robbery where . . . drugs are involved
2    and appear to be the item . . . identified as a piece of property to take
     by force or fear.
3

4    (ECF No. 19-13 at 24.)

5        At trial, the parties stipulated that petitioner was convicted of first degree residential

6    robbery for the 2005 incident. (ECF No. 19-10 at 202.) At the conclusion of the trial, the court

7    instructed the jury in relevant part:

8        The People presented evidence that defendant Antonio Reyna
         committed the offense of residential robbery in 2005 that was not
9        charged in this case.

10       . . .

11       If you decide that the defendant committed the uncharged offense,
         you may, but are not required to, consider that evidence for the
12       limited purpose of deciding whether the defendant acted with the
         intent to commit robbery in this case.
13
         In evaluating this evidence, consider the similarity or lack of
14       similarity between the uncharged offense and the charged offense.

15       Do not consider this evidence for any other purpose except for the
         limited purpose as explained above [and] to determine the
16       defendant's credibility as a witness . . .

17       Do not conclude from this evidence that the defendant has a bad
         character or is disposed to commit crime.
18

19   (ECF No. 19-11 at 31.) As set forth above, the state appellate court concluded that the trial court

20   did not abuse its discretion in admitting this evidence under Cal. Evid. Code § 1101, nor violate

21   petitioner's due process rights.

22       Petitioner attempts to characterize this is an unreasonable determination of the facts under

23   § 2254(d)(2), arguing that the 2005 conviction was effectively admitted to show identity;

24   therefore, it was subject to a higher standard of similarity of crimes than evidence admitted to

25   show motive and intent. (ECF No. 28 at 42-43.) But the trial court rejected this argument and

26   adopted the prosecution's position that the evidence went to show intent. The appellate court

27   found that admission for this purpose was proper under state law. A factual determination is not

28

                                              11

1  at issue, and habeas relief is not available for an alleged error in the interpretation or application

2  of state law.  Estelle, 502 U.S. at 68.

3        The admission of evidence does not provide a basis for habeas relief unless it rendered the

4  trial fundamentally unfair in violation of due process.  Estelle, 502 U.S. at 72.  "Under AEDPA,

5  even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not

6  permit the grant of federal habeas relief if not forbidden by 'clearly established Federal law,' as

7  laid out by the Supreme Court."  Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009)

8  (quoting 28 U.S.C. § 2254(d)).  The Supreme Court "has not yet made a clear ruling that

9  admission of irrelevant or overtly prejudicial evidence constitutes a due process violation

10  sufficient to warrant issuance of the writ."  Holley, 568 F3d. at 1101; see also Greel v. Martel,

11  472 F. App'x 503, 504 (9th Cir. 2012) ("There is ... no clearly established federal law that

12  admitting prejudicial evidence violates due process.").

13        Moreover, petitioner has not shown undue prejudice from evidence of the 2005 robbery.

14  To the extent he argues that it allowed the jury to infer propensity to commit charged offense, the

15  trial court instructed the jury on how it could consider the evidence.  See Weeks v. Angelone, 528

16  U.S. 225, 234 (2000) (jury is presumed to follow instructions).  While petitioner speculates that

17  the 2005 conviction "taint[ed] the jury's perception" throughout the trial, he gives no reason to

18  believe they did not follow the limiting instruction.

19        "Because the Supreme Court has not clearly decided whether an admission of propensity

20  evidence constitutes a due process violation sufficient to warrant habeas relief, this Court cannot

21  conclude that the state court's ruling was contrary to, or an unreasonable application of, clearly

22  established federal law."  Morse v. Koenig, No. 2:21-cv-01667-TLN-KJN-P, 2022 WL 3030538,

23  *18 (E.D. Cal. Aug. 1, 2022) (collecting cases).  Here too, because the state court's decision was

24  not contrary to, nor an unreasonable application of, clearly established Supreme Court authority,

25  petitioner is not entitled to habeas relief on this claim.

26        B.  Claim Two: Ineffective Assistance of Counsel

27        Petitioner argues that his defense attorney's failure to move for the trial judge to recuse

28  herself from a pretrial hearing in which his co-defendant Goins pled guilty, and from the trial

itself, violated his right to effective assistance of counsel.  (ECF No. 28 at 60-75.)  In response, respondent argues that petitioner has not shown deficient performance or prejudice as to either the Goins hearing or the trial. (ECF No. 31 at 12-20.)

The California Court of Appeal issued the last reasoned state court decision addressing this claim.  The California Court of Appeal denied this claim for the following reasons:

I

Defendant contends the trial judge erred by not recusing herself from a hearing on whether to exclude testimony of William Goins. He claims the recusal was necessary because the trial court was involved in convincing Goins to plead guilty. Recognizing that he did not object to the trial judge's presiding at the hearing, defendant asserts no objection was necessary but, if an objection was necessary, defense counsel violated his right to effective assistance of counsel by failing to object.

A

The proceedings forming the basis of defendant's argument occurred after codefendant Goins and the prosecution reported to the trial judge the details of plea negotiations. The trial judge expressed surprise that Goins had not agreed to an offer of 12 years for robbery, with a prior serious felony conviction, because the original charges held the potential for a life sentence; the trial judge also expressed surprise that the prosecutor had further amended the offer to 10 years. The trial judge noted that Sacramento juries can be unpredictable in drug cases such as the case against Goins and it was possible that Goins might be convicted even if defendant was not convicted. The trial judge further noted the evidence against Goins was strong but new law pertaining to felony murder could have an effect on the case. In the trial judge's opinion, Goins had an excellent attorney. Goins said he did not want to stay in the county jail out of concern for his own safety and the safety of his family, and the trial judge said that it could be arranged for him to be sent to state prison soon after he testified in this case. The trial judge stressed that Goins would be required to testify truthfully in this case and allowed Goins to make a telephone call to his sister.

Goins pleaded guilty to robbery and admitted a prior serious felony conviction with a stipulated sentence of 10 years. In exchange, all other charges, including murder, were dismissed. And Goins agreed to testify truthfully in this case.

After Goins pleaded guilty, defendant requested a continuance, which the trial court granted. Defense counsel informed the trial court that he intended to cross-examine Goins concerning the terms of the plea agreement, and the trial court agreed that the evidence would be admissible.

13

When later asked about Goins's plea negotiations, counsel for Goins said that, in his "evaluation and judgment," Goins had decided to plead guilty before the trial judge became involved in discussions about where Goins would serve time. In counsel's opinion, Goins made the decision to plead guilty on his own and did not wish to withdraw his plea. Counsel said Goins "wanted this agreement and he did not feel in the slightest bit coerced." The prosecutor and counsel for Goins agreed that Goins had already agreed to plead guilty before the trial judge took up the question of when defendant would be sent from county jail to state prison.

B

Defendant argues the trial judge should have recused herself, even though defendant did not raise the issue in the trial court.

. . .

Here, because defendant did not assert his instant recusal argument in the trial court, he cannot complain on appeal, even if his appellate argument is that constitutional rights were violated.

. . .

Anticipating forfeiture, defendant argues in the alternative that his counsel was ineffective in failing to assert recusal in the trial court.

" 'In order to establish a claim of ineffective assistance of counsel, defendant bears the burden of demonstrating, first, that counsel's performance was deficient because it "fell below an objective standard of reasonableness [¶] ... under prevailing professional norms." [Citations.] Unless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." [Citation.] If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." [Citations.] If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [Citation.]' [Citation.]" (People v. Lopez (2008) 42 Cal.4th 960, 966 (Lopez).)

Defendant's claim of ineffective assistance of counsel fails on both the deficient-performance and resulting-prejudice questions because there is no reasonable probability the trial judge would have, or should have, recused herself if defense counsel had objected to the trial judge's participation and no reasonable probability defendant would have obtained a more favorable result if defense counsel had

1
2

> objected. The record indicates the trial judge did not unduly influence
> Goins and there is no showing the trial judge's involvement in
> Goins's plea was inappropriate.

3
4
5

> Defendant argues counsel's failure to assert recusal was prejudicial
> because it is impossible to tell whether subsequent trial court rulings
> against defendant were the result of animus that developed after
> defendant called the trial judge's conduct into question. But there is
> no evidence of animus in this record, and no showing of prejudice.

6

(ECF No. 19-17 at 4-8.)

7       To state an ineffective assistance of counsel claim, a defendant must show that (1) his

8  counsel's performance was deficient, falling below an objective standard of reasonableness, and

9  (2) his counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466

10 U.S. 668, 687-88 (1984). For the deficiency prong, "a court must indulge a strong presumption

11 that counsel's conduct falls within the wide range of reasonable professional assistance; that is,

12 the defendant must overcome the presumption that, under the circumstances, the challenged

13 action 'might be considered sound trial strategy.'" Id. at 689 (citation omitted). For the prejudice

14 prong, the defendant "must show that there is a reasonable probability that, but for counsel's

15 unprofessional errors, the result of the proceeding would have been different. A reasonable

16 probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

17 "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the

18 two apply in tandem, review is 'doubly' so." Harrington v. Richter, 562 U.S. 86, 105 (2011)

19 (internal citations omitted). "When § 2254(d) applies, . . . the question is whether there is any

20 reasonable argument that counsel satisfied Strickland's deferential standard." Id.

21      Here, after pleading guilty to second degree robbery on the cusp of trial in exchange for a

22 ten-year sentence (ECF No. 19-6 at 157-170), petitioner's codefendant Goins became a key

23 witness for the prosecution. (See, e.g., ECF No. 19-6 at 231-239 (opening statement regarding

24 Goins testimony), ECF No. 19-7 at 49-56 (Goins testimony about discussing robbing the DeWitt

25 Court house with petitioner).) Prior to trial, defense counsel moved to exclude Goins as a witness

26 due to the trial judge's alleged involvement in convincing him to plead guilty. (ECF No. 19-1 at

27 176-183.) The motion asserted that, in five to seven minutes of in-court but off-the-record

28 discussion, the trial judge "went too far" in encouraging a guilty plea and exerted pressure on

15

Goins, turning him into "a star witness against defendant Reyna." (Id. at 183.)  Defense counsel

based his knowledge of the off-the-record discussion on a text message from Goins' counsel

summarizing what was discussed off-the-record, including where Goins would be housed during

trial and his preference to be housed in state prison rather than county jail.  (Id. at 185-195.)  The

motion contended that petitioner would be prejudiced "as a result of the Court's involvement in

the plea negotiations process" and that Goins should be excluded as a witness.  (Id. at 176-183.)

At the hearing on the motion, Goins' counsel Pete Harned was present, and the trial judge

elicited testimony on how the Goins' plea came to be entered.  (ECF No. 19-13 at 4-5.)  Harned

testified that the judge, the Hon. Judge Maryanne Gilliard, never entered into negotiations

between Harned and Goins, and that Harned and Goins had been discussing settlement prior to

appearing in court.  Goins was concerned that, if he took a plea and agreed to testify, he would be

housed in the county jail for years during the investigation and trial.  (Id. at 6-7.)

> THE COURT: So your client had already agreed at that point in time
> before I came out on the bench and discussed where he would be
> housed, he had already agreed in principal that he was going to be
> entering a plea to 10 to 12 years, whichever it was, and the only
> question from him was can I get sentenced now or am I going to stick
> around for several years.
>
> MR. HARNED: Well, yes to the 10. The couple years made a
> difference. I told him – I will feel safe saying this: That I felt
> confident the 10-year offer would be forthcoming even if it had not
> been formally addressed to me. And I was confident as well that his
> housing issues would be resolved. That was my opinion and that's
> what I shared with him.
>
> THE COURT: But just so the record is clear, I never engaged in
> should it be 10, should it be 12, I never got into that detail at all.
>
> MR. HARNED: No. Certainly not my presence or Mr. Goins', to my
> knowledge.

(Id. at 7.)

Petitioner's counsel argued that he would not be able to "effectively cross-examine

[Goins] about what turned him from [not guilty to guilty] based on some off-the-record

commentary" and that, as a result, petitioner could not get a fair trial if Goins testified.  (ECF No.

19-13 at 11.)  Mr. Harned reiterated that Goins had already decided to enter a guilty plea before

Judge Gilliard took the bench, adding that Goins "did not feel in the slightest bit coerced."  (Id. at

1    10-11.)  Judge Gilliard denied the motion the motion to exclude, stating in part:

2          COURT: [D]uring the five minutes or so I spoke with Mr. Goins
              concerning his issues with respect to where he would be housed. . . .
3          I think, in retrospect, . . . it would have been a better practice for me
              to have had this memorialized on the record, but I am confident that
4          this Court did not engage in any way, shape or form in a plea bargain
              that caused Mr. Goins to enter his plea of guilty to a second-degree
5          robbery. . . . I was not a part of the bargain that was reached between
              Mr. Goins and the People.
6

7    (Id. at 12-13.)  The judge then asked defense counsel if he believed his client "is able to get a fair

8    trial in front of this Judge?" and counsel responded: "Yes, I think so."  (Id. at 15-16.)

9          On appeal, petitioner argued that the trial judge should have recused herself from the trial

10   under California Code of Civil Procedure, section 170.1 because of the earlier dispute over her

11   involvement in Goins' guilty plea.  (ECF No. 19-14 at 68.)  Petitioner claimed that, because the

12   judge had an interest in "protecting her professional reputation by ruling she had not improperly

13   influenced Goins in accepting the plea bargain, . . . the situation inexorably raised the specter of

14   actual bias . . . [and] created a[n] appearance of impropriety, partiality, and unfairness[.]"  (Id. at

15   68-69; see also ECF No. 28 at 71 ("The judge couldn't be expected to be impartial because she

16   was being accused of impropriety.").

17         But the appellate court found there was no reason that the trial judge "should have . . .

18   recused herself" and "no showing the trial judge's involvement in Goins's plea was

19   inappropriate."[4]  In other words, the circumstances did not warrant her recusal under state law.

20   _____

21   [4] Petitioner argues that this claim should be reviewed de novo because the last reasoned decision
     only addressed whether his counsel should have moved for the trial judge's recusal from Goins'
22   hearing, not from the trial itself.  (ECF No. 28 at 72.)  However, the state appellate court squarely
     addressed petitioner's ineffective assistance claim, which argued that defense counsel "should
23   have requested that the court disqualify itself from continuing to sit on the case, or at the very
     least, recuse itself from hearing the motion [to exclude Goins as a witness]."  (ECF No. 19-14 at
24   77.)
            The appellate court responded: "[T]here is no reasonable probability the trial judge would
25   have, or should have, recused herself if defense counsel had objected to the trial judge's
     participation and no reasonable probability defendant would have obtained a more favorable
26   result if defense counsel had objected."  (ECF No. 19-17 at 8.)  While petitioner now reads this
     language as applying to the Goins hearing only, he did not argue in his petition for review that the
27   appellate court's framing of his claims was incorrect.  Thus, the state court is presumed to have

28

1   See Bradshaw v. Rickey, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law,

2   including one announced on direct appeal of the challenged conviction, binds a federal court

3   sitting in habeas corpus.").  It is not deficient performance to fail to file a recusal motion unlikely

4   to be granted on its merits.  See Martinez v. Ryan, 926 F.3d 1215, 1226 (9th Cir. 2019) (trial

5   counsel did not perform ineffectively by not moving for judge's recusal, as "failure to raise a

6   meritless argument does not constitute ineffective assistance.") (quoting Boag v. Raines, 769 F.2d

7   1341, 1344 (9th Cir. 1985)).  As in Martinez, petitioner "does not point to anything in the record

8   that demonstrates actual impropriety by" the trial judge or that would compel a reasonable

9   defense attorney to seek her recusal from the case.  See Rippo v. Baker, 580 U.S. 285, 287 (2017)

10  (under federal Due Process clause, "[r]ecusal is required when, objectively speaking, 'the

11  probability of actual bias on the part of the judge . . . is too high to be constitutionally tolerable.")

12  (internal quotation marks and citation omitted).  Petitioner has not satisfied the first prong of the

13  Strickland test.

14          Nor has petitioner shown that, but for his counsel's alleged error in failing to move for

15  recusal, the result at trial would have been more favorable to him. As he has satisfied neither

16  prong of Strickland, petitioner is not entitled to habeas relief on this claim.

17          C.  Claim 3: Insufficient Notice of Special Circumstance

18          Petitioner next claims that he did not receive adequate notice of the attempted robbery

19  special circumstance that was instructed at trial, as only robbery was charged in the information,

20  violating his Fifth and Sixth Amendment rights.  Respondent counters that the state supreme court

21  reasonably concluded that petitioner received adequate notice of the special circumstance under

22  California law, and that its decision was not contrary to, or an unreasonable application of, clearly

23  established Supreme Court authority.

24          The California Court of Appeal issued the last reasoned state court decision addressing

25  this claim.  The California Court of Appeal denied this claim for the following reasons:

26              Defendant contends the trial court erred by instructing the jury it

27  _____

28  ruled on all of his claims, and AEDPA review is proper.  See Johnson v. Williams, 568 U.S. 289,
    306 (2013).

could find true the special circumstance allegation that the murder was committed during a robbery or attempted robbery based on attempted robbery. He also contends the prosecutor committed misconduct by arguing that the special circumstance could be based on attempted robbery and that defense counsel violated his right to effective assistance of counsel by not objecting based on prosecutorial misconduct.

In the operative amended information, the People alleged defendant murdered Cervantes while "engaged in the commission of the crime of Robbery, within the meaning of Penal Code section 190.2(a)(17)." Section 190.2, subdivision (a)(17) lists the crimes, including robbery, constituting special circumstances. It provides: "The murder was committed while the defendant was engaged in, or was an accomplice in, the commission of, attempted commission of, or the immediate flight after committing, or attempting to commit, the following felonies." (§ 190.2, subd. (a)(17), italics added.) Consistent with section 190.2, subdivision (a)(17), the trial court, over defendant's objection, instructed the jury that it could find true the special circumstance if it found defendant committed the murder while defendant was engaged in robbery or attempted robbery.

In People v. Williams (2013) 56 Cal.4th 630, the California Supreme Court held, in a case with the same wording about robbery as this case in the information, that reference to "section 190.2, subdivision (a)(17)" in the information was sufficient to put the defendant on notice that the special circumstance finding could be based on robbery or attempted robbery. (Id. at pp. 680, 681.) After so holding, the California Supreme Court continued: "Furthermore, even assuming for the sake of argument that the information provided inadequate notice on this point, defendant received notice of the facts underlying the attempted robbery theory at his preliminary hearing, which we have stated generally provides adequate notice of the prosecutor's theory. [Citation.]" (Id. at p. 681.)

Defendant did not cite People v. Williams, supra, 56 Cal.4th 630 in his opening brief. After the Attorney General relied on Williams in his respondent's brief, defendant argued in his reply brief that the holding is "less than an absolute rule" and "less than firm" because the California Supreme Court also wrote that " 'even assuming for the sake of argument that the information provided inadequate notice on this point,' " defendant in that case was on notice from the prosecution's statement in the preliminary hearing. We decline defendant's invitation to conclude that the holding in Williams is less than firm. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455.) Defendant's challenge to the trial court's instruction lacks merit.

Defendant further suggests the prosecutor committed prosecutorial misconduct by laying a trap for defense counsel when the prosecutor did not include attempted robbery in the language of the amended information. This argument is without merit because the law allows such pleading and argument. Citation to section 190.2, subdivision (a)(17) in the information puts a defendant on notice that the special circumstance finding may be based on an attempt to commit the

1
2
3

> listed crimes, including robbery. (People v. Williams, supra, 56 Cal.4th at p. 681.) Moreover, defendant's trial counsel did not provide ineffective assistance by not objecting to the prosecutor's conduct; the objection would have been fruitless. (Lopez, supra, 42 Cal.4th at p. 966.)

4

(ECF No. 19-17 at 20-21.)

5

     The Supreme Court has clearly established that a defendant must receive adequate notice

6

of the charges against him. "No principle of procedural due process is more clearly established

7

than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by

8

that charge, if desired, are among the constitutional rights of every accused in a criminal

9

proceeding in all courts, state or federal[.]" Cole v. Arkansas, 333 U.S. 196, 201 (1948). This

10

guarantee is applicable to the states through the due process clause of the Fourteenth Amendment.

11

Gautt v. Lewis, 489 F.3d 993, 1003 (9th Cir. 2007). Moreover, the Sixth Amendment guarantees

12

a criminal defendant the fundamental right to be informed of the nature and cause of the charges

13

made against him so as to permit adequate preparation of a defense. Id. at 1002.

14

     "In order to determine whether a defendant has received constitutionally adequate notice,

15

the court looks first to the information." Calderon v. Prunty, 59 F.3d 1005, 1009 (9th Cir. 1995)

16

(citation omitted); Gautt, 489 F.3d at 1003. "The principal purpose of the information is to

17

provide the defendant with a description of the charges against him in sufficient detail to enable

18

him to prepare his defense." Gautt, 489 F.3d at 1009 (citation omitted). Here, the amended

19

information charged that the murder of Rafael Cervantes was committed "while the said

20

defendant was engaged in the commission of the crime of Robbery, within the meaning of Penal

21

Code Section 190.2(a)(17)." (ECF No. 19-1 at 92) (emphasis added).

22

     As the state appellate court noted, § 190.2(a)(17) specifies a special circumstance in which

23

"[t]he murder was committed while the defendant was engaged in, or was an accomplice in, the

24

commission of, attempted commission of, or the immediate flight after committing, or attempting

25

to commit" certain specified felonies, including robbery. (ECF No. 19-17 at 20) (emphasis

26

added).) In People v. Williams, 56 Cal. 4th 630, 681 (2013), the court rejected a similarly

27

situated defendant's due process and Sixth Amendment claims, holding that

28

> [d]efendant received adequate notice that the robbery-murder

20

1   special-circumstance allegation could be based on robbery or
2   attempted robbery. As described above, the information referenced
    section 190.2, subdivision (a)(17), which includes attempted
    robbery.
3
        Petitioner claims that the California Supreme Court's decision based on <u>Williams</u> was an
4
    unreasonable application of established federal law.  (ECF No. 28 at 78.)  On federal habeas
5
    review, however, in an analogous case, the Ninth Circuit found that the state appellate court
6
    reasonably concluded that the defendant received constitutionally adequate notice of an attempted
7
    rape special circumstance where the information alleged that he
8
9           "engaged in the commission of rape in violation of Penal Code
            Section 261, within the meaning of Penal Code Section
10          190.2(a)(17)." The provisions of Cal. Penal Code § 190.2(a)(17) in
            effect at the time of Cain's trial specified that a special circumstance
            may be based on the defendant's attempted commission of rape[.] . .
11          . Thus, the allegations premised on Cal. Penal Code § 190.2(a)(17)
            sufficiently apprised Cain that the special circumstance explicitly
12          applied to rape and to attempted rape. <u>See</u> <u>Gautt</u>, 489 F.3d at 1003–
            04 (explaining that "the charging document need not contain a
13          citation to the specific statute at issue; the substance of the
            information, however, must in some appreciable way apprise the
14          defendant of the charges against him so that he may prepare a defense
            accordingly") (footnote reference omitted).
15
16  <u>Cain v. Chapell</u>, 870 F.3d 1003, 1014-15 (9th Cir. 2017).  The same logic applies here.

17          Petitioner contends that the state court's decision on this claim is contrary to the Supreme

18  Court's holding in <u>Russell v. U.S.</u>, 369 U.S. 749 (1962), concerning the sufficiency of an

19  indictment charging the defendant with refusal to answer questions from a congressional

20  subcommittee.  But the Supreme Court has since held that <u>Russell</u> "stand[s] for nothing more than

21  the general proposition that a defendant must have adequate notice of the charges against him."

22  <u>Lopez v. Smith</u>, 574 U.S. 1, 6 (2014).  Because the state court's decision was not contrary to, or

23  an unreasonable application of, clearly established Supreme Court authority, petitioner is not

24  entitled to habeas relief on this claim.

25          D.  Claim Four: Cumulative Error

26          Petitioner's fourth and final claim is that the cumulative effect of the errors alleged herein

27  constitute a denial of due process.

28          The Ninth Circuit has concluded that under clearly established United States Supreme

                                        21

1    Court precedent the combined effect of multiple trial errors may give rise to a due process

2    violation if it renders a trial fundamentally unfair, even where each error considered individually

3    would not require reversal.  Parle v. Runnels, 505 F.3d 922, 927 (9th. Cir. 2007) (citing Donnelly

4    v. DeChristoforo, 416 U.S. 637, 643 (1974), and Chambers v. Mississippi, 410 U.S. 284, 290

5    (1973)).  "[T]he fundamental question in determining whether the combined effect of trial errors

6    violated a defendant's due process rights is whether the errors rendered the criminal defense 'far

7    less persuasive,' and thereby had a 'substantial and injurious effect or influence' on the jury's

8    verdict."  Parle, 505 F.3d at 928 (internal citations omitted); see also Hein v. Sullivan, 601 F.3d

9    897, 916 (9th Cir. 2010) (same).

10        This Court has addressed each of petitioner's claims and has concluded that no error of

11    constitutional magnitude occurred.  This Court also concludes that the alleged errors, even when

12    considered together, did not render petitioner's defense "far less persuasive," nor did they have a

13    "substantial and injurious effect or influence on the jury's verdict."  See Parle, 505 F.3d at 928.

14    Accordingly, petitioner is not entitled to relief on his claim of cumulative error.

15    V.  CONCLUSION

16        Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

17    habeas corpus (ECF No. 28) be denied.

18        These findings and recommendations are submitted to the United States District Judge

19    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

20    after being served with these findings and recommendations, any party may file written

21    objections with the court and serve a copy on all parties.  Such a document should be captioned

22    "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

23    he shall also address whether a certificate of appealability should issue and, if so, why, and as to

24    which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

25    applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

26    § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

27    service of the objections.  The parties are advised that failure to file objections within the

28    specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

1    F.2d 1153 (9th Cir. 1991).

2    Dated:  08/04/2025

3                                                                    _____
                                                                    CHI SOO KIM
4                                                                    UNITED STATES MAGISTRATE JUDGE

5

6

7

8    6/reyn2295.157.csk

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28